**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KAREN ARNOLD,

                    Plaintiff,

vs.                                                    Case No.  3:14-cv-530-J-34MCR

HEARTLAND DENTAL, LLC,

                    Defendant.
_____

**ORDER**

**THIS CAUSE** is before the Court on Defendant Heartland Dental, LLC's Motion to

Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (Doc. No. 11;

Motion) filed on June 16, 2014.  Plaintiff filed her response in opposition to the Motion on

July 10, 2014.  See Plaintiff's Response in Opposition to Defendant Heartland Dental, LLC's

Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 14; Response).  Accordingly, the

Motion is ripe for review.

**I.      Background Facts**[1]

        Plaintiff Karen Arnold (Arnold) worked as a dental assistant for Arlington River Family

Dental beginning in August of 1982 and continued working in the position after Defendant

Heartland Dental, LLC (Heartland) acquired the practice in early 2012.  See Amended

Complaint and Demand for Jury Trial (Doc. No. 8; Complaint) ¶¶11, 13.  Arnold alleges that,

_____

        [1]        In considering the Motion to Dismiss, the Court must accept all factual allegations in the
Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all
reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th
Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  As such, the facts
recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

throughout her almost thirty years of employment as a dental assistant, "her performance was exemplary," "she met or exceeded the goals and objectives set for her," and she "had no disciplinary issues." Id. ¶12. Arnold further alleges that, once Heartland acquired the practice, Practice Administrator Kanesha Elmore (Elmore) became her supervisor. See id. ¶¶9, 13. Thereafter, in March 2012, Elmore discovered that Arnold was a lesbian in a same-sex relationship. Id. ¶¶14-15. Upon making this discovery, Arnold avers that Elmore "began asking inappropriate questions in the workplace, including about whether Ms. Arnold's girlfriend had ever been with a man and whether Ms. Arnold considered her to be 'the man' in the relationship." Id. ¶15. Arnold found these comments to be offensive, and she alleges these statements demonstrated Elmore's discontent with Arnold's failure "to conform to the traditional female role of having a relationship with a male." Id. Moreover, Arnold avers that prior to late March (and apparently prior to discovering Arnold's sexual orientation), "Elmore had worked with a male in the workplace who was openly gay," but Elmore did not have any "workplace discrimination issues" with him. See id. ¶16. To the contrary, Arnold alleges "Elmore characterized this male employee as 'cute' and stated that she liked him." Id.

Despite Elmore's apparent tolerance for this homosexual male, Arnold alleges that Elmore began discriminating against her once Elmore discovered her lesbian relationship, asking another employee how they felt about working with "all these lesbians," refusing to speak to Arnold, and becoming overly hostile and rude to her. See id. ¶¶17-19, 21. Due to Elmore's behavior and comments, which Arnold alleges "were related to Plaintiff Arnold's gender, in that she was a homosexual female and gender non-conforming," Arnold's work environment became "intolerable and hostile." See id. ¶¶21-22. On or about April 18, 2012,

Arnold alleges that she met with Susan Grotrian, the Office Manager, and Elmore "to address the work environment she was experiencing." Id. ¶23.  Instead of corrective action, Arnold alleges that she received a pretextual disciplinary write-up for:  failure to fill out patient routing slips properly and gossiping.  See id.  Arnold responded in writing to the disciplinary write-up "raising concerns about her job security and work environment," but she alleges that Elmore again threatened to write her up for gossiping as Arnold was attempting to explain the new mandatory routing slip requirement to a co-worker. Id. ¶24.

The following day, April 19, 2012, Arnold arrived four minutes late after having alerted the office by phone that she got caught in traffic resulting from an accident on her route to work. See id. ¶25.  Despite the fact that other employees were up to thirty minutes late, Arnold was the only employee to receive disciplinary action for her tardiness. See id.  As a result of this incident, on April 20, 2012, Elmore called Arnold into her office, told her she was no longer a "good fit for the office," and terminated her. Id. ¶26.  Arnold alleges that no other employee was treated this way, and she believes she would not have suffered discrimination if she were a man. See id. ¶¶22, 26.

Based on Elmore's alleged actions, Arnold filed the instant action seeking damages and reinstatement. See generally Complaint.  In Count One of her Complaint, Arnold asserts a claim against Heartland for sex discrimination in violation of section 760.10 of the Florida Statues, or the Florida Civil Rights Act (FCRA). See id. at 6-7.  As to this count, Arnold alleges that she was subject to a campaign of discrimination and a hostile or abusive working environment because of her gender, or more specifically, her gender non-conformity. See id. ¶¶29-30.  Because Heartland knew of Arnold's complaints, Arnold

3

alleges Heartland contributed to the hostile, abusive and discriminatory environment by issuing unwarranted discipline, failing to implement corrective action against Elmore, and terminating her employment. Id. ¶¶31-32. In Count Two of her Complaint, Arnold asserts a claim of unlawful retaliation in violation of the FCRA, alleging that she was singled out for disciplinary action, set up for failure in the workplace, and terminated when she complained about Elmore's sexually discriminatory and harassing behavior. See id. at 7–8.

In the instant Motion, Heartland moves to dismiss the Complaint, arguing that Arnold's sex discrimination claim must be dismissed because the FCRA does not protect against discrimination based on sexual orientation and Arnold "cannot circumvent this limitation simply by arguing . . . that homosexuality is tantamount to gender non-conformity." See Motion at 5-11. Additionally, Heartland contends that, because sexual orientation discrimination is not unlawful, complaining about such treatment is not a protected activity and Arnold's unlawful retaliation claim is also due to be dismissed. See id. at 11-12. Alternatively, Heartland argues that the Complaint should be dismissed because Arnold fails to plead the facts relevant to her claims with sufficient particularity. See id. at 12-15. In Arnold's Response, she contends that she is not alleging discrimination based on sexual orientation because she alleges that Elmore did not discriminate against a homosexual male. See Response at 8. Instead, Arnold argues that Elmore discriminated against her because she failed to conform to "the female gender stereotype." See Response at 8-9. As to the sufficiency of her factual allegations, Arnold argues that she provided enough detail to "provide sufficient expectation that discovery will reveal evidence of her asserted sex discrimination claim such that the Motion should be denied." Id. at 8. Last, as to her

4

retaliation claim, Arnold contends that she specifically complained of discrimination based on her failure to conform to the female gender stereotype and the hostile work environment Elmore created.  See id. at 9.  Moreover, she argues that, even if the facts do not rise to discrimination based on gender stereotyping, Arnold alleges that she had a good faith belief that such discrimination was occurring, complained about it, and she was terminated in retaliation, which is sufficient to state a retaliation claim.  See id. at 9-10.

## II.    Standard of Review

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).  Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

5

556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680-81. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## III.    Discussion

Because Arnold asserts claims for sex discrimination and retaliation under the FCRA, the statutory provisions relevant to her claims are Florida Statutes sections 760.10(1)(a) (Count One) and 760.10(7) (Count Two).  Section 760.10(1)(a) makes it an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."  Section 760.10(7) of the FCRA provides that:

6

> It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

Fla. Stat. § 760.10(7).  When considering claims brought under the FCRA, Florida courts look to decisions interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. for guidance.  See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.")[2]; see also Castleberry v. Edward M. Chadbourne, Inc., 810 So. 2d 1028, 1030 n.3 (Fla. 1st DCA 2002) ("The Florida Civil Rights Act is patterned after Title VII, and therefore federal case law regarding Title VII is applicable."); Carter v. Health Mgmt. Assocs., 989 So. 2d 1258, 1262 (Fla. 2d DCA 2008) ("Florida courts follow federal case law when examining FCRA retaliation claims.").  Thus, where a plaintiff is unable to maintain a claim under Title VII, she cannot maintain a claim based on the same conduct under the FCRA.  See Harper, 139 F.3d at 1389-90 ("[B]ecause the plaintiffs cannot maintain a retaliation claim under Title VII, we conclude that the district court correctly dismissed the plaintiffs' Florida Civil Rights Act retaliation claim.").

---

[2] Title VII provides "that it is unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Holifield v. Reno, 115 F.3d 1555, 1561 (11th Cir. 1997) (quoting 42 U.S.C. § 2000e-2(a)(1)).  Additionally, under Title VII an employer is prohibited from retaliating against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

### A.      Sex Discrimination

In the Complaint, Arnold asserts that Heartland discriminated against her by subjecting her to a hostile work environment.  To establish a prima facie case of hostile work environment discrimination, a plaintiff must show that: "(1) [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious liability or direct liability."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); see also e.g. Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).  Because Arnold also claims that Heartland's discriminatory conduct caused her termination, the Court will construe her Complaint as also alleging a claim of disparate treatment.  To establish a prima facie case of discrimination by disparate treatment, "the plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside her protected class more favorably than she was treated; and (4) she was qualified for the job."  See Burke-Fowler v.Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006); see also Olson v. Dex Imaging, Inc., No. 8:14-cv-1829-T-30TGW, 2014 WL 5420811, at *6 (M.D. Fla. Oct. 22, 2014).  However, a plaintiff need not allege facts sufficient to make out a prima facie case in order to survive a motion to dismiss.  Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (citing Swierkiewicz, 534 U.S. at 511).  Rather, the plaintiff "must provide, 'enough

8

factual matter (taken as true) to suggest' intentional race [or gender] discrimination." Id. (citing Twombly, 127 S.Ct. at 1965).

As to both the hostile work environment and disparate treatment claims set forth in Count One of Arnold's Complaint, Heartland contends that Arnold has not sufficiently alleged that she belongs to a protected group or class.  In this regard, Heartland argues that Arnold's claims should be dismissed because, although she purports to be asserting discrimination on the basis of sex, the facts she alleges in support of her claims suggest that she is complaining about discrimination on the basis of her sexual orientation, which is not protected under the FCRA.  See Motion at 5-11.  In her Response, Arnold disagrees with Heartland's characterization of her claims explaining that she is alleging discrimination on the basis of gender non-conformity rather than sexual orientation.  See generally Response. Although the Eleventh Circuit has not addressed this issue, every court that has done so has found that Title VII, and accordingly the FCRA, was not intended to cover discrimination against homosexuals.  See, e.g., Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir. 2000) ("The law is well-settled in this circuit and in all others to have reached the question that Simonton has no cause of action under Title VII because Title VII does not prohibit harassment or discrimination because of sexual orientation.").  However, Arnold argues that the FCRA should be construed liberally, and that her discrimination and harassment claim should not be dismissed because the claim is based not on her homosexuality but rather based on her gender given that Heartland did not discriminate against the homosexual male.  See Response at 5-9.

This matter is before the Court on a motion to dismiss pursuant to Rule 12(b)(6).  In a similar context, one jurist noted:

> [W]here, as here, the plaintiff has pleaded facts from which a fact finder could infer that sex (and not simply homosexuality) played a role in the employment decision and contributed to the hostility of the work environment, drawing the line should not occur at the pleading stage of the lawsuit . . . Most of the cases relied on by the majority were decided on summary judgment or after trial.  It behooves courts to view the evidence developed during discovery before declaring that a defendant's behavior was motived by hostility to homosexuals rather than discrimination "because of . . . sex."

Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 767-68 (6th Cir. 2006) (Lawson, J., dissenting) (internal citations omitted).  The Court expresses considerable skepticism as to Arnold's contention that the facts alleged in her Complaint reflect discrimination based on her sex or gender non-conformity as opposed to her sexual orientation.[3]  But, at this stage of the proceedings, the Court declines to find, as a matter of law, that Arnold's claim is so lacking in plausibility as to warrant dismissal.  As such, as to Count One the Motion is due to be denied.

---

[3]   At the summary judgment stage the district courts in both the Northern and Southern Districts of Florida have rejected claims where the sole basis of the alleged discrimination is a gender non-conformity stemming from the plaintiff's homosexuality. See Anderson v. Napolitano, No. 09-60744-CIV, 2010 WL 431898, at *6 (S.D. Fla. Feb. 8, 2010) (rejecting implication that all homosexual men fail to comply with male stereotypes because they are homosexual, stating "that would mean 'that every case of sexual orientation discrimination [would] translate into a triable case of gender stereotyping discrimination, which would contradict Congress's decision not to make sexual orientation discrimination cognizable under Title VII"); see also Mowery v. Escambia Cnty. Utils. Auth., No. 3:04CV382-RS-EMT, 2006 WL 327965, at *7 (N.D. Fla. Feb. 10, 2006) (explaining that a male plaintiff alleging discrimination failed to allege that he suffered adverse employment action because he was feminine or unmanly and finding that the alleged harassment he experienced related to his perceived sexual orientation, not to his manliness).

**B.     Retaliation**

In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Cotton v. Cracker Barrel Old Country Store, 434 F.3d 1227, 1233 (11th Cir. 2006).   Here, Arnold alleges that she was terminated, which is an adverse employment action. See Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006).   However, Heartland contends that Arnold has not alleged the first element of a retaliation claim, that she engaged in statutorily protected conduct, because sexual orientation discrimination is not unlawful and because she fails to allege that she complained about discrimination based on sex.

Arnold asserts a claim under the opposition clause of section 760.10(7), which prohibits an employer from discriminating "against any person because that person has opposed any practice which is an unlawful employment practice under" the FCRA.   To establish that she engaged in protected conduct under the opposition clause, Arnold must allege facts, which if true, support the conclusion that she had "a good faith, reasonable belief that . . . [Heartland] was engaged in unlawful employment practices." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997).   Additionally, "in order to constitute protected opposition activity, [Arnold] must, at the very least, communicate her belief that illegal discrimination is occurring." Marcelin v. Eckerd Corp. of Fla., Inc., No. 8:04-cv-491-T-17MAP, 2006 WL 923745, at *9 (M.D. Fla. Apr. 10, 2006) (citing Webb v. R & B Holding Co., 992 F. Supp. 1382, 1389 (S.D. Fla. 1998)).   Indeed, "[i]t is not enough for the

11

employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." Webb, 992 F. Supp. at 1389.

In her Complaint Arnold alleges that she "met with Susan Grotrian . . . and Ms. Elmore to address the work environment she was experiencing." See Complaint ¶23. However, she does not allege that she informed either Grotrian or Elmore that she believed Elmore was discriminating against her because of her sex.  Indeed, she does not assert that she raised any complaint at all, only that they met and she received discipline.  Although Arnold vaguely alleges that she wanted to address her work environment, Arnold does not allege sufficient facts to support a plausible claim that she communicated her belief that Elmore's actions in subjecting her to the work environment alleged in her Complaint were unlawful.  Without any suggestion that she raised a complaint at this meeting and that the complaint reflected her belief that Elmore was discriminating against her, this allegation is wholly insufficient to support any inference that Arnold engaged in statutorily protected activity.[4]  Arnold also points to her written response to the disciplinary write-up she received at the meeting in which she alleges that she raised "concerns about her job security and work environment." Id. ¶24. Once again, however, Arnold gives no suggestion whatsoever as to the content of this written response or her "concerns."  These allegations are insufficient to suggest that Arnold complained about sex discrimination and, in doing so,

---

[4]    The Court notes that in Count Two, after incorporating the factual allegations of her Complaint, Arnold asserts that "[w]hen Plaintiff Arnold complained about the sexually discriminatory, offensive and harassing behavior of her supervisor, Ms. Elmore, and the discriminatory acts directed towards her, Plaintiff Arnold was subjected to unlawful retaliation." Complaint ¶36.  However, this legal conclusion is insufficient to support a finding that Arnold complained not only of Elmore's actions but also that such actions constituted unlawful sex discrimination during her meeting with Grotrian and Elmore or at any other unspecified time.

12

opposed an unlawful employment practice.  Because Arnold has not alleged that she put

Heartland on notice of a violation of the FCRA, she has failed to allege that she engaged in

statutorily protected expression.  See Marcelin, 2006 WL 923745, at *9 ("Courts analyzing

the issue have consistently required that an employee's complaints must clearly put an

employer on notice of a violation of the law." (citing cases)); see also Long v. Russell Cnty.

Comm'n, No. 3:09-CV-90-WKW [WO], 2010 WL 5391603 (M.D. Ala. Dec. 27, 2010)

("Generalized complaints about working conditions cannot form the basis for a claim of

retaliation." (citing Reynolds v. Golden Corral Corp., 106 F. Supp. 2d 1243, 1253-54 (M.D.

Ala. 1999))); Freese v. Wuesthoff Health Sys., Inc., No. 6:06-cv-175-Orl-31JGG, 2006 WL

1382111, at *7 (M.D. Fla. May 19, 2006) ("A complaint about treatment or discipline,

unrelated to statutorily-protected matters, does not constitute protected activity, and thus

cannot serve as the basis for a retaliation claim.").  Thus, she cannot maintain a retaliation

claim against Heartland and Count Two of the Complaint is due to be dismissed.[5]

     Accordingly, it is hereby **ORDERED**:

---

[5]    Although Arnold attempted to seek leave to amend her Complaint as an alternative to dismissal, the Court denied the request as not properly before the Court and directed Arnold to file an appropriate motion if she so desired.  See Order (Doc. No. 25).  Arnold, who is represented by counsel, did not file a motion for leave to amend, and the Court declines to permit her an additional opportunity to do so given the failure to suggest any facts that might support a viable claim.  See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").  Indeed, Arnold failed to correct this deficiency in her Amended Complaint despite the fact that Heartland raised the issue in its motion to dismiss Arnold's original complaint.  See Defendant Heartland Dental, LLC's Motion to Dismiss Plaintiff's Complaint and Memorandum of Law in Support (Doc. No. 4) at 10-11.

Defendant Heartland Dental, LLC's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support (Doc. No. 11) is **GRANTED, in part,** and **DENIED, in part**.

    a.    The Motion is **GRANTED** to the extent that Count Two of the Amended Complaint and Demand for Jury Trial (Doc. No. 8) is **DISMISSED**.

    b.    Otherwise, the Motion is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of March, 2015.

**MARCIA MORALES HOWARD**
United States District Judge

lc16

Copies to:

Counsel of Record

14